UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETER J. ANGSTEN and | ) | |
| CONSTANCE J. ANGSTEN | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05 C 4254 |
| | ) | |
| GEORGE P. BLAMEUSER, | ) | |
| CLIFFORD B. OTTO, | ) | |
| NORBERT SAUERS, and | ) | |
| KEVIN K. WINKLER | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiffs Peter and Constance Angsten (the "Angstens") filed this lawsuit, alleging that a neighbor (Blameuser) and two of his associates (Otto and Winkler) repeatedly trespassed on their land, damaged their property and threatened their family in various ways. The Angstens also claim that Norbert Sauers, the Chief of Police and Road Supervisor in their hometown of Bull Valley, Illinois, denied them equal protection of the laws.

Defendants George P. Blameuser, Clifford B. Otto and Kevin K. Winkler ("Movants") filed a motion to dismiss the Angstens' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, we grant the motion as to Counts II through IV, and deny it as to Count I.

## BACKGROUND

When considering a motion to dismiss under Rules 12(b)(1) and (b)(6), we accept all well-pleaded allegations as true. *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 981 (7th Cir. 2004); *Thompson v. Illinois Dep't of Prof'l Regul.*, 300 F.3d 750, 753 (7th Cir.

2002).  The facts as alleged by the Angstens are as follows.

According to the Complaint, Movants conspired to destroy and/or damage property, inflict physical and emotional distress to the Angsten family and "drive the Angstens out of Bull Valley."  (Compl. ¶ 7.)  Since August 2003, Movants committed numerous overt acts in furtherance of the alleged state-law civilian conspiracy.  (Compl. ¶¶ 8-9.)  Specifically, Movants trespassed on the Angsten property and damaged trees, bushes, the swimming pool, its equipment, and a barn.  (Compl. ¶ 8.)  Movants harassed the Angstens by, among other things, causing "smoke and noxious fumes to enter" their property and threatening to kill family members.  (*Id.*)  Movants also "subjected the Angstens to unwarranted policy investigations, scrutiny and threats of arrest" by falsely accusing them of violations.  (*Id.*)  In addition to the conspiracy charge (Count II), the Complaint asserts a trespass claim against Winkler (Count III) and an intentional infliction of emotional distress claim against the Movants (Count IV). (Compl. ¶¶ 21-23, 25-28.)

In Count I of their Complaint, the Angstens also claim that Chief of Police Sauers, acting under the color of law, deprived them of the equal protection of the laws.  (Compl. ¶¶ 13, 15.) Although Sauers knew about the ongoing conspiracy perpetrated by Movants, he intentionally refused to stop their unlawful conduct because he "did not like the Angstens."  (Compl. ¶¶ 12, 15.)  The Angstens assert that Sauers can be held liable for this Constitutional violation under 42 U.S.C. § 1983.  (Compl. ¶¶ 6, 14.)

Movants contend that this Court lacks subject matter jurisdiction over the Angstens' claims.  (Mot. Dismiss ¶¶ 7, 10-12.)  According to Movants, Count I fails to establish federal subject matter jurisdiction over the purported Section 1983 claim and, therefore, cannot be the

basis for supplemental jurisdiction over the remaining claims. (Mot. Dismiss ¶¶ 7, 10-12.) They also complain that the Angstens' allegations of conspiracy are insufficient to state a claim under Section 1983. (Mot. Dismiss ¶ 9. ) Movants further argue that even if Count I sets forth a federal claim, it does not share a common nucleus of operative fact with Counts II through IV to justify our exercise of supplemental jurisdiction. (Reply ¶¶ 5-6.)

## STANDARD OF REVIEW

The purpose of a motion to dismiss under Rules 12(b)(1) and 12(b)(6) is to test the sufficiency of the complaint, not decide the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Accordingly, dismissal under Rule 12(b)(6) is warranted only if the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957).

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon the federal court. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may look beyond the complaint to other evidence submitted by the parties. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). The plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. U. S. Dept. Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

## ANALYSIS

As the Seventh Circuit has observed, "[s]ubject-matter jurisdiction is the first question in

every case, and if the court concludes that it lacks jurisdiction it must proceed no further."

*Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998). Therefore, we must first evaluate whether we have subject matter jurisdiction –original or supplemental – over the Angstens' claims. If we have jurisdiction over the Angstens' claims, we may then consider the sufficiency of the pleadings under Rule 12(b)(6).

### A. Count I: Section 1983 Claim against Sauers

As the parties agree, only the federal Section 1983 claim against Sauers could give rise to original jurisdiction. (Compl. ¶ 1; Resp. at 1-2; Reply ¶ 5.) Pursuant to 28 U.S.C. § 1331, this Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Moreover, Congress specifically granted federal courts jurisdiction over lawsuits arising under Section 1983. 28 U.S.C. § 1343 (extending original jurisdiction to any action "to redress the deprivation, under color of any State law . . . of any right . . . secured by the Constitution"). Here, Count I alleges that Sauers deprived the Angstens "of the equal protection of the laws." (Compl. ¶ 13.) According to the Complaint, Sauers violated the Angstens' "guaranteed liberty and property rights" by intentionally refusing "to act to stop the unlawful conduct of the Civilian Conspirators." (Compl. ¶ 15.) Given these Constitutional allegations and the provisions of 28 U.S.C. §1343, we unquestionably have jurisdiction over Count I.

In addition, we conclude that Count I more than adequately states a Section 1983 equal protection claim against Sauers. To establish personal liability[1] under Section 1983, "it is

---

[1]The Angstens have not alleged that Sauers acted pursuant to any government custom or policy, as required for an official capacity claim. *Graham*, 473 U.S. at 166-167; *Monell v. Dep't Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037 (1978); *see Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991) (holding that official capacity suit may be "presumed when the indicia of an official policy or

enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105-3106 (1985). Here, the Angstens specifically allege (and Sauers admitted in his Answer) that he is the Chief of Police for Bull Valley and acted at all relevant times "under color of the laws of the State of Illinois and the Ordinances of Bull Valley." (Compl. ¶ 14.) In conducting his law enforcement duties, Sauers "intentionally treated the Angstens differently from other residents of Bull Valley" in violation of the equal protection clause of the Fourteenth Amendment. (Compl. ¶ 12.) U.S. Const. Art. XIV, § 1. Moreover, the Angstens claim that they fall into a "class-of-one" targeted by Sauers for adverse treatment solely because he personally disliked them. (Compl. ¶ 12; *see* Resp. at 2.) As such, they have sufficiently pled an equal protection claim actionable under Section 1983 and we deny the Rule 12(b)(6) motion with respect to Count I. *See Lauth v. McCollum*, 424 F.3d 631, 633-634 (7th Cir. 2005) (describing proof needed to succeed on class-of-one equal protection claim); *Crowley v. McKinney*, 400 F.3d 965, 972 (7th Cir. 2005) (reversing dismissal of class-of-one claim where complaint alleged that public official would not have subjected plaintiff to adverse treatment but for personal hostility).

      B.      *Counts II through IV: State Law Claims against Movants*

As we have original jurisdiction over Count I, we next consider whether we also have supplemental jurisdiction over the state-law claims asserted in Count II through IV. Where a district court has original jurisdiction over one claim, it may exercise supplemental jurisdiction "over all other claims that are so related . . . that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). For supplemental jurisdiction to exist, the federal and

---

custom are present in the complaint").

state claims "must derive from a common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *UMWA v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966); *see City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164-165, 172-174, 118 S.Ct. 523, 529-530, 533-534 (1997); *Berg v. BCS Finan. Corp.*, 372 F. Supp. 2d 1080, 1092-1093 (N.D. Ill. 2005). Although "a loose factual connection" may be sufficient to confer supplemental jurisdiction, the facts at issue must be both common and operative. *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995); *Berg*, 372 F. Supp. 2d at 1093-1094; *Gen'l Auto Serv. Station v. City of Chicago*, No. 00 C 0368, 2004 WL 442636, at *11-12 (N.D. Ill. Mar. 9, 2004). Courts routinely compare the facts necessary to prove the elements of the federal claim with those necessary to the success of the state claim to assess whether they share a common nucleus of operative fact. *See Ammerman*, 54 F.3d at 424-425; *Eager v. Commonwealth Edison Co.*, 187 F. Supp. 2d 1033, 1040 (N.D. Ill. 2002); *Early v. Bruno*, No. 00 C 4339, 2001 WL 775968, at *2 (N.D. Ill. July 10, 2001); *Menard v. City of Chicago*, No. 98 C 4859, 1999 WL 608716, at *2 (N.D. Ill. Aug. 5, 1999).

In this case, we consider whether the facts relevant to the Angstens' state-law tort claims against Movants are common to the operative facts relevant to the federal claim against Sauers. Count II consists of a civil conspiracy claim against Movants. Under Illinois law, a civil conspiracy arises "when two or more people combine to accomplish, through concerted action, either an unlawful act or a lawful act in an unlawful manner." *Multiut Corp. v. Draiman*, 834 N.E.2d 43, 51, 295 Ill. Dec. 818 (Ill. App. 1st Dist. 2005); *see McClure v. Owens Corning Fiberglass Corp.*, 720 N.E.2d 242, 258, 188 Ill.2d 102, 133 (Ill. 1999). To state a claim, a plaintiff must allege an agreement among the perpetrators, as well as tortious acts undertaken to

further the agreement. *McClure*, 720 N.E.2d at 258. The Angstens will be required to prove, as they have alleged, that: (1) the Movants agreed to destroy and damage the Angstens' property and to inflict physical and emotional harm; and (2) one or more of the Movants engaged in tortious conduct to advance their plan. Operative facts would likely include information (including any "who, what, when, where, why and how" details) concerning the interactions between Movants and the Angstens, the relationships between Movants themselves, the development of their agreement to harm the Angstens, what torts were committed, and what damages resulted from the conspiracy.

For the trespass claim against Winkler in Count III, the Angstens must show "an intentional invasion of the exclusive possession and physical condition of land." *Freese v. Buoy*, 576 N.E.2d 1176, 1182, 217 Ill. App. 3d 234, 244 (Ill. App. 5th Dist. 1991); *see Livers v. Wu*, 6 F. Supp. 2d 921, 935 (N.D. Ill. 1998). Individuals may be liable for intrusions committed by things or third persons if they "know with a high degree of certainty" that the intrusions will result from their actions. *Freese*, 576 N.E.2d at 1182. To prove their claim against Winkler, the Angstens may introduce evidence regarding the boundaries of their land in relation to neighboring properties, the circumstances of Winkler's trespasses, whether his actions gave rise to intrusions by third parties or objects, the damage inflicted on the land, and what remedies might be necessary to cure the physical damage.

The Angstens assert a final state-law claim for intentional infliction of emotional distress ("IIED") against the Movants in Count IV. To prevail on this claim, "a plaintiff must show (1) that the conduct was truly extreme and outrageous, (2) that the actor intended that his conduct inflict severe distress or knew that there was a high probability that his conduct would

inflict such distress, and (3) that the conduct in fact caused severe emotional distress." *Schiller v. Mitchell*, 828 N.E.2d 323, 357 Ill. App. 3d 435, 447(Ill. App. 2d Dist. 2005); *see Briggs v. North Shore Sanitary Dist.*, 914 F. Supp. 245, 251-252 (N.D. Ill. 1996). The Angstens' IIED lawsuit will involve an intensive fact-specific analysis of the alleged outrageous conduct, the Movants' intent to cause harm or knowledge that they would do so, and the resulting distress suffered by the Angstens. *See McGrath*, 533 N.E.2d at 811 (identifying numerous factual considerations for assessing whether conduct is extreme and outrageous); *Tuite v. Corbitt*, 830 N.E.2d 779, 788-789, 358 Ill. App. 3d 889, 899 (Ill. App. 1st Dist. 2005) ("Whether the defendant's conduct is extreme and outrageous is determined by the facts and circumstances of each case.").

As stated above, plaintiffs suing under Section 1983 must show that a public official, "acting under color of state law, caused the deprivation of a federal right." *Graham*, 473 U.S. at 166. Here, the Angstens contend that Sauers, acting under color of law as an official of Bull Valley, denied them the equal protection of the laws by: (1) subjecting them to "unwarranted police harassment;"[2] and (2) not attempting to curb the unlawful conduct of the Civilian Conspirators." (Compl. ¶¶ 11, 15.) This claim requires them to prove that "the actions of the state, whether in the form of prosecution or otherwise, was a spiteful effort to 'get' [them] for reasons wholly unrelated to any legitimate state objective." *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995); *see Lauth*, 424 F.3d at 634 ("class-of-one plaintiff must . . . 'negative any reasonable conceivable state of facts that could provide a rational basis for the classification'")

---

[2]While the Angstens claim that Sauers and his subordinates harassed and threatened them, they do not allege that this misconduct stemmed from the Movants' false complaints. (Compl. ¶¶ 8(d), 11.) The Complaint does not draw any explicit connection between the false accusations made by Movants as part of their conspiracy and the harassment inflicted by Sauers in violation of the equal protection clause.

(*quoting Bd. of Trustees v. Garrett*, 531 U.S. 356, 367, 121 S.Ct. 955 (2001)).  Underlying operative facts may include: (1) what complaints the Angstens made to Sauers; (2) Bull Valley procedures governing police responses to complaints; (3) whether Sauers and his subordinates followed that protocol in relevant instances; (4) Sauers' personal dislike of the Angstens; (5) Sauers' reasons for refusing to stop the Movants; (6) the acts of harassment and threats of arrest committed by Bull Valley police; and (7) Sauers' reasons for harassing the Angstens.

Considering the elements of each cause of action, we simply cannot conclude that the state and federal claims share a common nucleus of operative fact.  We initially observe that Counts II through IV do not implicate Sauers for any state tort offense.  (Compl. ¶¶ 17-19, 21-23, 25-28.)  Further, and as the Angstens acknowledge, Count I does not claim that Movants deprived them of any Constitutional right.  (Resp. at 1.)  Moreover, the facts necessary to prove the state-law claims against Movants, as described above, are completely different from those relevant to the Section 1983 claim against Sauers.  While the claims share a general factual background (that is, the unchecked harassment of the Angstens by their neighbor and his friends), the *operative* facts necessary for the tort claims are wholly unrelated to the *operative* facts essential to the elements of the Section 1983 claim.  *Berg*, 372 F. Supp. 2d at 1093 (dismissing state law claims and commenting that "[s]upplemental jurisdiction does not exist where the federal and state claims merely share a factual background."); *see Menard,* 1999 WL 608716, at *2 (declining to extend jurisdiction over IIED claim because the facts needed were "clearly distinct" from those supporting Section 1983 claim).  The factual investigation and evidentiary support required to succeed on the civil conspiracy and intentional tort claims "will go far beyond" what is required for the Section 1983 claim, which focuses on Sauers' conduct

and rationale. *See Menard,* 1999 WL 608716, at *2. If the federal claim was resolved, the state-law claims could continue unaffected, and vice versa. *See Eager*, 187 F. Supp. 2d at 1040; *Gen'l Auto Serv. Station*, 2004 WL 442636 at *11-12. Accordingly, we lack subject matter jurisdiction over the state law claims and they must be dismissed.[3]

## CONCLUSION

For the above stated reasons, we dismiss Counts II through IV for lack of subject matter jurisdiction, without prejudice as to refiling in state court. We deny the motion to dismiss as to Count I against Sauers. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: November 16, 2005

---

[3]Even if we had supplemental jurisdiction over Counts II though IV, we would hesitate to exercise it under these circumstances. Supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726; *see City of Chicago*, 522 U.S. at 172-174. While supplemental jurisdiction may be justified if it serves the ends of "judicial economy, convenience and fairness to litigants[,] . . . needless decisions of state law should be avoided as both a matter of comity and to promote justice between the parties." *Gibbs*, 383 U.S. at 726; *see also* 28 U.S.C. 1367(c) (identifying situations in which court may refuse jurisdiction, including where the state claim "substantially predominates" over the federal claim). Despite the existence of a separate but ancillary federal claim, this lawsuit is really a state-law tort action better heard by the Illinois courts.